*Harwood,* for appellees.

---

## W. W. HANLEY *v.* A. J. WHIPPS.

**Judicial Sale—Written Assignment of Bid—Conveyance by Commissioner to Assignee—Contract Performed.**

Where a purchaser at a judicial sale assigns his bid to another, the contract is fully performed upon the execution of the conveyance by the commissioner to the assignee.

APPEAL FROM KENTON CIRCUIT COURT.

May 9, 1871.

OPINION BY JUDGE LINDSAY:

Hanley and Whipps bought jointly at commissioner's sale on the 24th of February, 1868, lot No. 134, in the City of Covington. On the 23d day of the following April, Hanley executed and delivered to Whipps the following writing:

"To the Commissioner Wallace, and Court of Kenton County, Ky., I surrender to A. J. Whipps my interest in above property upon his paying the purchase bond, and request that title be made to him. Covington, April 23d, 1868.

Signed, W. W. Hanley."

Accordingly on the 3d of April, 1869, the court's commissioner, under the direction of the court, did make a conveyance of said lot to Whipps. In the meantime Hanley by purchase from one Kearney had become the owner and was in possession of the adjoining lot No. 135.

On the 9th of January, 1869, Whipps brought this suit in equity, basing his right to belief upon the writing about quoted, and alleging that Hanley by the execution of the same had undertaken to transfer the title and possession of the lot No. 134 to him, but that under his purchase from Kearney he had come into possession of a strip of said lot fronting 16 inches on Garrard Street and running back 110 feet, and that he refused to surrender said strip in pursuance of his written obligation. He prayed for a specific execution of said written contract and that Hanley be compelled to surrender the 16 inches in controversy. Hanley by his answer, denied that he was in possession of or claiming any part of lot No. 134, or that any portion of the land held or possessed by him was owned by Whipps.

Under their purchase at the commissioner's sale in the case of Lee vs. Southgate, the parties acquired the right to such title to lot No. 134 as was vested in the parties to that proceeding. Hanley upon condition that Whipps would pay the entire purchase price relinquished to him, such interest therein as he had acquired under their joint purchase, and when the commissioner conveyed the lot to Whipps, the contract was fully executed upon the part of Hanley.

This conveyance passed to Whipps the title of the Southgate heirs to said lot and this was all he contracted for.

At the time of the joint purchase, Kearney, who then owned lot No. 135 was in possession of the 16 inches of land in controversy, claiming it as his own and adversely to the Southgate heirs and that fact was known to both Whipps and Hanley, and Hanley did not attempt to pass nor did Whipps expect to acquire from him by his said relinquishment any title or right whatever to the land then possessed by Kearney. Hence it was no breach of Hanley's obligation for him to purchase from and enter upon said land and hold under Kearney, and he can not be compelled to surrender any part of the land he thus acquired, by a proceeding in equity for a specific performance of a contract which the record shows was fully executed before the hearing in this case and as soon as Whipps had paid the purchase money for the lot, and placed himself in a position to demand its execution.

If Whipps can recover at all in this proceeding, it must be as in an action of ejectment upon the strength of his own title. Excluding the depositions of Kearney and Laidley who are claimed to be incompetent witnesses, it appears that Whipps has now in possession a lot fronting on Garrard Street 47½ feet, the exact front to which he is entitled. It is claimed, however, and there is proof conducing to show that he has within his inclosure about 16 inches of an alley, and that this accounts for his having in possession a front equal to the full front of his lot. This fact is ascertained if at all by the surveys made at different times. The difficulty attending these surveys is the fact, that no ancient monuments fixing the corner of a neighboring square, or street, or lot could be found and identified as such. Certain curb marks are spoken of by the surveyors, but neither of them know, nor does tradition establish when and by whom, and for what purpose they were made. Some of the old fences and buildings in the neighborhood, which are presumed to have been built upon the lines of the street and alleys, seem to corroborate the opinions of the surveyors, but there are other buildings and fnces equally ancient, which conform exactly to the lines as claimed by Hanley. In addition to this it is certain that for more than fifteen years before this controversy arose, Kearney and those under whom he claimed had held and claimed the 16 inches in contest as part of lot No. 135.

Southgate, who erected the brick dwelling house many years ago upon lot No. 134, built its north wall exactly upon what is now claimed to be the north line of said lot. He permitted the owners of lot No. 135 to hold up to the wall of his said house, and he and his grantees must have known of the claim being asserted by the owner of said lot. For many years past this property has been valuable, and it is by no means probable that the owner of lot 134 would have permitted his neighbors to hold and claim 16 inches of their front without taking some steps to assert and quiet their title. Nor is it probable that in the erection of a valuable and substantial house, Southgate would have carelessly permitted one of the walls to have been placed within 16 inches of the boundary. So close as to render valueless the strip left, and far enough away to materially diminish his front upon the street.

Considering such evidence only as is undoubtedly competent, we are of opinion that the preponderance is decidedly in favor of the proposition that the north wall of the house on lot 134 is on the north line of said lot, and hence that the appellee has failed to establish his right to recover.

Wherefore the judgment of the circuit court is reversed and the cause remanded with instructions to dismiss the appellee's petition.

*Benton, Stevenson & Myers, for appellant.*

*Menzines & Furber, for appellee.*